Okay, we'll call the next case. Barker v. Attorney General. Mike, can't we turn this off? I like the way I look on video, but it can be distracting. I don't know that counsel needs to look at us twice. I didn't realize that was counsel for the next case. It was sitting there at the counsel table, but obviously it is. Okay, we'll call the next case. Barker v. Attorney General of the United States. Ms. Treby? Yes. Good morning. Good morning. May it please the court, my name is Shannon Treby and I represent Gregory Barker. Your honors, in this case the government essentially presents a catch-22. It states that there is no need for a remand. Ms. Treby, did you want to ask for rebuttal time? Oh yes, I'm sorry. May I have three minutes for rebuttal? That request will be granted. In this case, the government essentially presents a catch-22. It states that there is no need for a remand because there was insufficient evidence of incompetency. But the very reason there is sparse evidence of incompetency is because the trial court failed to develop the record in this manner in the first place. What could you have looked at? You know, we reviewed all of the record that was provided. What is it that one could have looked at to know that there should have been questioning? Other than the one question, of course I don't have it in front of me at the moment, but the one question where he says, how are you doing? And he says, okay, as of the moment or as of this time or something like that. Yes, when the judge asked. Any medical problems. Yes. Not as of now. Right. So should the government decide to apply the current, or should the court decide to apply the current BIA's test, which is that the judge is only required to make findings if there are indicia of incompetency present. There were several indicia, and they're all listed in the brief. One is the attorney issue. He wasn't able to retain his attorney. His attorney withdrew. That happens. People have a disagreement. I mean, this wasn't like four attorneys in a row I can't get along with. He had a problem with one attorney, and that was that. Yes, and then he was also unable to find a new attorney despite being given a list. Oh, my God, that's an indicia? Yes, if that's an indicia of incompetency, the world is rife with incompetent litigants because that happens, sadly, with some regularity. Particularly in immigration cases. Yes, Your Honor, but going to the definition of incompetency as to whether you're able to put on evidence and to coordinate a trial, if you can't coordinate getting an attorney despite being given a list of pro bono counsel, that's an indication, not necessarily just positive. Give me your best factor because that's not your best factor, I hope. He recalled he didn't know the day of the hearing. He didn't know that that was going to be the day that he was actually going to be put on trial. If he didn't know the day of his hearing, that is something that a competent person should be able to know. The assertion that's made by the other side with respect to that, I think, is he'd had 11 continuances. So saying, I didn't know I would be facing this final decision today, can logically be understood as nothing more than I thought I was going to get a 12th continuance because that's what I wanted, not I didn't have a comprehension of I was going to court or some mental defect with respect to that. What's your response? That's possible, Your Honor, but we don't know. We don't know the reason because the record doesn't state why he didn't know that. Well, we're supposed to be asking ourselves, aren't we? I mean, you're asking us to say the immigration judge should have seen these things and known or suspected and done some further inquiry. So my question is, if it's just as logical as the Attorney General's asserting that this was not a statement of I'm not oriented to time, place, or identity, but is rather I thought I was going to get the 12th continuance, if that's just as logical a conclusion, why would we conclude that that is an indicia of incompetence that I.J. should have picked up on? Because this Court is not required to make factual findings as to whether he was actually incompetent. The test is only whether there was enough there to raise a question, whether there were indicia, whether the fact that he couldn't remember who his employer was and only remembered after prompting, the fact that he was very confused as to the reasons that his PCR was denied, all of these together. When you say he was very confused about why it was denied, he gave two reasons, each of which find some support in the record, didn't he? He said it, as I recall, it's because he said it was because he wasn't there, he wasn't present for his PCR, and that wasn't the reason it was denied. It was denied because Padilla wasn't retroactive. Right. And because he doesn't know or didn't remember to say that Padilla is not retroactive, that should have. . . It's not that. He could have said I'm confused as to the reason why it was denied, I don't understand, but he came up with a reason that had no support in the documentation. In the hearings that are provided to us, he had an exchange with the IJ, whatever it was, 12, 13 times, some perfunctory, some substantive. Other than what you've pointed out, not remembering Padilla or saying as of now no problems, what could an IJ have thought of as he was having an exchange that seemed to be question, responsive answer, question, responsive answer, that would lead the IJ to say I've got to pause. Given the current BIA test for incompetency, the fact that Barker put on nothing in his defense, the fact that he was confused about what was going on, that he didn't know what day his hearing was, and that he stated that he wasn't comfortable representing himself and that he didn't think that he could put on his own defense, that given the current definition of incompetency, whether you're able to examine and present evidence and cross-examine witnesses, all of that together should have indicated to the judge that Barker was not capable of providing his own defense in this hearing. Let's get to the heart of the matter here. What's wrong with the standards that the BIA has adopted in the matter of MAM? Yes, Your Honor, that test, it's very good at detecting certain kinds of incompetency, and I believe it's the kinds of incompetency that the panel is just talking about, whether you can answer questions coherently or incoherently, whether you're hearing voices that aren't there, or whether you're babbling and not being responsive. But that is not the only type of incompetency. In fact, it's probably not even the most common type of incompetency. With mental incompetency in particular, you'll see a lot of what happened in Barker's case, people who are very agreeable and try to get along with authority figures and give the authority figures what they want instead of actually trying to advocate on your own behalf. Instead of stating, oh, no, I'm confused, I don't know what's going on, please help me, they just try to go along because when they've expressed confusion in the past or when they try to defend themselves in the past, people get angry with them. Aren't you trying to mix incompetency with almost ineffectiveness of representing yourself, per se? Aren't you trying to mix up those two concepts? Your Honor, I don't believe I'm trying to mix it up. I think that the definition put forth by the BIA contemplates a certain level of proficiency in being able to defend yourself. It's, again, stating that it states that the person must have a reasonable opportunity to examine and present evidence and cross-examine witnesses. That does contemplate a certain level of proficiency and ability to competence in defending yourself. I don't believe the government has argued with that definition or said that it's wrong. So that's why we think taking the brief time that it would take for the court to ask questions to ensure that an unrepresented alien before the court is indeed able to do that is justified under the Matthews test. Under the Matthews factors, I don't believe the government debates either that this is a very important issue and that the interests at stake are very high, especially in Barker's case. He's been here his entire life. He's going to be essentially exiled from this country. Yeah. So accepting that these are important issues at stake, let's turn to the question of prejudice. Does he have to show prejudice or not? At one point in your brief, you seem to acknowledge that maybe he does have to show prejudice, and you cite our position in Conn v. Attorney General to us. At another point, the next page, you cite the Leslie case and indicate that maybe he doesn't have to show prejudice. Which is it? Does he have to show prejudice or doesn't he? I believe the Leslie case is that prejudice is presumed when a regulation that is put forth to protect an alien's due process rights is violated. So in this case, that did happen because he was asked to admit to his deportability, and an incompetent alien cannot do that. When you say, and an incompetent alien can't do that, you're putting the rabbit back in the hat, right? I mean, the question is, is he incompetent or not, and should the IJ have known that? So you can't get to where you're going by assuming the conclusion. How do you use Leslie to get where you want to go without assuming that he's incompetent, or can you? Your Honor, I believe that's part of what the government does with the prejudice standard. The prejudice standard is not whether he would have been found competent below, because that is basically a redundant question. If the test that the government advocates for in the show of incompetency is indeed the appropriate test, then asking whether he would have been found competent below is redundant of that test. The test is rather whether a competent person could have made legal arguments. Okay. So did he have to show prejudice in this instance or not? Not under Leslie, because prejudice would be presumed. Because? Prejudice would be presumed because if he was incompetent, he would not have been able to admit to his deportability. Okay. Can you see why that feels a little circular? I mean, I'm not sure how that gets you where you want to get. Let me ask you this question. At one point, you seem to be arguing that Padilla, well, let me quote you this from page 29 of your brief. Had Barker filed for post-conviction relief earlier, it would not have been time barred, and he would have been able to present the winning Padilla arguments in the first instance without having to rely on Padilla's applying retroactively. He didn't get to do that, however, because of the government's inordinate delay. It sounds like what you're trying to do in the form of a latches argument is to turn Padilla, contrary to Chávez, into a retroactive precedent. He would have done this earlier, but for the government's bad acts, and therefore Padilla ought to apply. That's a pretty neat bit of jiu-jitsu, but are we really allowed to do that? I believe so, Your Honor. First of all, it would be a different application of Padilla. We would not be overturning the original conviction that he had. But in that instance, I think the Padilla rule would apply, right? Yes, that's right. Well, that's to show the necessary prejudice for the latches argument. In other words, had the government timely brought this case, he would have been able to make that argument in the first instance. So that goes to prejudice for latches. So you do have to show prejudice? Under latches. So latches itself is a prejudice argument because he could have brought up latches in the court below. For latches, you also have to show prejudice, so that would be the prejudice for the latches argument. All right. Okay. Okay, Ms. Treby, we'll have you back on rebuttal. Thank you. Ms. Treby, thank you very much. And Ms. Hicken? That's correct. Good morning, Your Honor. This is Laura Halliday Hicken for Attorney General Eric Holder. In this case, Mr. Barker was found removable for having been convicted of an aggravated felony drug trafficking offense based on his cocaine possession conviction, and he was found ineligible for relief. Now he's claiming that the immigration judge violated his due process rights by failing to conduct a competency hearing. We're familiar with all that. Can you tell me whether Mr. Barker has to show prejudice or not? Yes, Mr. Barker. Or is prejudice presumed here? No, prejudice is not presumed. Under Leslie, since we're applying a regulation here which is designed to guard the constitutional rights of a person to be protected from making admissions when perhaps they're not in a position to make admissions, aren't we supposed to be saying prejudice presumed? Why isn't the character of the regulation the key point under Leslie? I think, as Your Honor pointed out, that that argument at this juncture is circular. Petitioner's claim is that the immigration judge should have performed a competency evaluation, not that petitioner was actually incompetent. And so that regulation that they're raising in the prejudice context wasn't violated here, wasn't established here. It's not been proven that he was incompetent and that they relied on his admission. And so it simply doesn't apply. I mean, the argument is about whether the immigration judge should have conducted the initial screening. And that argument doesn't presume that he was actually incompetent. And so petitioner does have to establish substantial prejudice to prevail on the due process claim in this context. So the only time that you could ever, I guess my question is, you would always have to show in a context like this, you'd have to show incompetence in order to take advantage of the Leslie rule where this regulation is concerned. Is that the government's position? That's correct. And this case wouldn't have to be presented on this record. I mean, Mr. Barker and his counsel would always have the opportunity to bring new evidence before the board in a motion to reopen. If they had evidence of incompetence that they wanted to get before the board so that the court could then review that, that would be an option. I mean, there's been no evidence presented. Why is the argument that your adversary has posed that there were enough indicia in the record that the IJ should have known? Why shouldn't we apply that? Right. Mr. Barker meaningfully participated in these proceedings over the 12 hearings. He was able to – Would you raise that microphone a little bit so you're speaking? Not that high, but so you're speaking more directly. Okay. Mr. Barker meaningfully participated in his proceedings throughout the 12 hearings. He was initially represented by counsel after his counsel withdrew. He updated the judge on his post-conviction relief in state court. He requested continuances. He filed for asylum, testified in support of his asylum application. He's not a sophisticated litigant. He was unrepresented, but he meaningfully participated. It wasn't the fact that it was – he was there, I think, 11 times. That's correct, by 2011 continuances. Yeah, I mean, it wasn't the fact that – hearing came in 11 times either without counsel or with counsel who he wasn't satisfied with and wasn't sure what was going on and didn't know the last hearing was going to be the day of decision day. Don't all those facts begin to add up? A reasonable person would say, wait a minute, is this guy really competent to be here representing himself? Don't they become indicia of incompetence even under the matter of MAM? We would respectfully disagree. The reason he came back time and time again was that he was receiving continuances that he requested in order to pursue post-conviction relief in state court. He was hoping, and I think that this is very helpful in this context, to look back at the representation that he had when he had prior counsel. His prior counsel admitted that Petitioner was removable based on having been convicted of an aggravated felony drug trafficking offense. His strategy was to pursue post-conviction relief in state court and said that that was really the only viable option for him to avoid removability consequences. And he also admitted that there was no viable relief that Mr. Barker was eligible for. And so that was the strategy that his prior counsel was pursuing. That also undermines, it's helpful to point out, it undermines his substantial prejudice argument. Mr. Barker's argument is that if he had competent counsel, his result would have ultimately may have been different. There's no reason to believe that as his prior counsel. Why when you say there's no reason to believe that? I mean, is there not an argument to be made based on Padilla that if he'd had competent counsel there? Padilla says that removal is, in fact, maybe contrary to what we said in Restrepo. Padilla sort of indicates that this could be viewed as a penalty, right? I mean, it says, quote, we have recognized that deportation is a particularly severe penalty, but it's not in a strict sense a criminal sanction. Could competent counsel have gotten up there and said, hey, I'm entitled to a statute of limitations defense here because the Third Circuit, without mentioning Padilla because they were roughly simultaneous, said it's not a penalty. But look, the Supreme Court in Padilla says it is a penalty. I've got a basis for making a pitch for the application of the five-year statute of limitations instead of getting hauled in here for something that's a decade or better old. Right. No, the government's position is that Padilla didn't contemplate anything to do with whether deportation is a penalty with regard to the statute of limitations in 28 U.S.C. section 2462. It may not have invoked the statute of limitations, but it says what it says. It's a particularly severe penalty. That's a quote. Right. But we don't believe that you could read from that that the Padilla argument, that the court was contemplating trying to bring deportation proceedings within the statute of limitations. Would you not concede that that's at least a colorable argument based on the language of Padilla, that when the Supreme Court says deportation removal is a penalty, that competent counsel's got a basis for coming to court and saying, they just said it's a penalty. And look, there's that five-year statute of limitations. We ought to be able to have that reviewed and talked about, Judge. That's not an argument that a good lawyer would want to put in front of a court had he been represented. I don't think that that's ultimately a meritorious argument, which would be something. They wouldn't need an argument that would ultimately affect their proceedings. But even having said that, you were, excuse me, is that a meritorious argument? No, it's not that. Ultimately here, the issue for substantial prejudice is whether there's a competency issue. It's not that Petitioner didn't bring that argument because he was incompetent. The argument there is whether this is how this case becomes confused with the representation versus incompetence. It's not that Petitioner failed to bring that argument because he wasn't a competent person. He had a mental, you know, incompetency. It's that he was unrepresented, and he's not a sophisticated litigant. And is he going to bring that claim that we don't ultimately think is meritorious, but is he going to raise that claim? No. But the fact that an unrepresented alien is not able to raise a sophisticated legal claim is not indicative of mental incompetency. And the problem here is that being unrepresented and being incompetent are constantly being linked and bleeding over into each other, and they're separate. Just being an unrepresented alien, which is- Should we, hesitating on the Restrepo piece for a moment, should we be troubled, aside from whether he's competent or not, that the Attorney General is pulling somebody in on extraordinarily stale charge and throwing them out of the country? We said in Restrepo, quote, We find this enforcement history troubling, and it begs the question which we pose to the Attorney General at oral argument, in essence, is it not appropriate to impose some statute of limitations governing the period within which the government may prosecute the removal of aliens convicted of aggravated felonies? End quote. Here we are, you know, five years later, and the same question occurs. Shouldn't there be some limit on the government's capacity to reach back in time and haul people in and then say, you're out of here? Even though you haven't been in that country since you were, what, two months old? See you later. The government submits that it's within ICE's prosecutorial discretion, within the immigration officials- Within what? It's within the prosecutorial discretion of ICE to when to initiate removal proceedings. This is the authority that's been delegated to them. I mean, ultimately, in this case- So there's no statute of limitations ever? No. Period. Why the delay here? Well, my understanding is that Petitioner was brought in into some sort of law enforcement scenario in 2011, and that's when they ran his criminal record, and that's when his conviction came to light. And so he had some run-in, I'm not sure exactly- Was it a delay because INS was unaware of the prior conviction? Right, my understanding would be they're unaware. It's not always a real-time- How do you become aware? Well, a lot of times the alien will come to the attention in an instance like this with some other criminal offense or some other criminal contact, and when they screen the alien's prior record, it comes to light. So in 2011, when he had, and I'm not sure exactly what the result of that encounter was, but in 2011, when he had that encounter, he came to the immigration officials' attention. They found that he had an aggravated felony. If Congress wanted to put- The point of my question is how many holes are in the process, and whose responsibility is it to fix that, and does that go to the question of whether or not there should be any period of time during which the government can choose to remove a person for a conviction? If Congress wanted to put some sort of limitation on the ability of immigration officials to remove an alien because of, as you say, the staleness of a conviction, they could do so, and they have not. I mean, the aggravated felony drug trafficking convictions don't have a statute of limitations, and there's none been envisioned by Congress. And so it's apparent that Congress envisioned the immigration officials' ability to rely on these past convictions. And this may have never come to light if there had been amendments, but- Should we be looking at our own precedent here? Since Restrepo is explicitly pinned on, the holding in Restrepo that you're not under the five-year statute of limitations is expressly pinned on the assertion that there are cases from the Supreme Court holding that removal is not a penalty, and yet Padilla says expressly it is a particularly harsh penalty. Is it, given that intervening Supreme Court authority, so to speak, something we should be worried about and talking about and thinking about as we decide this case? I don't believe that's relevant in this case because, as I said, I don't think that- They've raised the statute of limitations argument, right? Right, but they raised it in the context that Petitioner would have raised that argument had he been competent, but he was unrepresented. There's really no reason to believe he failed to raise that argument because of an incompetency issue. It's really a question now that, okay, now we have sophisticated- I guess what I'm asking you is, is that question properly before us? Is the fact that they're raising a statute of limitations argument, Restrepo is in the mix, Padilla has come along. Does that put it in front of us in a way that we could properly consider it? I don't think that the Court needs to consider it in this context, where there were no indicia of incompetence, where you don't even have to reach the prejudice, but- Yeah, I'm not talking about prejudice or anything like that. I'm just asking you whether straight up the question of whether it's too stale, a statute of limitations applying to penalty, forfeiture as a penalty, is an issue that's been properly teed up, or is it just not really in front of us? I mean, it has been raised in the context of Petitioner's substantial prejudice argument, and we submit that it's not really before the Court because of how I described the incompetency- Or you just don't think we can get to it? I don't think it's necessary to get to it. We also don't think that Padilla has done anything to bring the five-year statute of limitations into the mix. Let me pose this question to you, and this is not a political statement. It's part of my inquiry. The administration that you represent has indicated to Congress that they're going to exercise certain degrees of prosecutorial discretion and not seek to deport and remove certain individuals who are in the country. Whether or not that's proper or not, that will be decided by somebody else. Maybe we might seek part of that, but that's not before us today. But assume that becomes part of the public policy of the Justice Department and Homeland Security for a number of years. Then along comes a new president ten years from now, and immigration is still this hot-button issue it is. The new president says, you know, that policy adopted in 2014 was wrong. I'm going to rip out this executive order, and I'm going to bring all those people in who could have been removed back in 2014, including the people who had- I know your aggravated felons weren't included in that declaration. I'm going to bring them all in. Is that going to be fair to those individuals? I mean, I really can't hypothesize about how that- I can't really hypothesize about in the future those scenarios. But doesn't that raise the question that, you know, the issue of whether or not the five-year catch-all statute of limitations applies here,  and could be changed by subsequent circumstances? I mean, subsequent circumstances could change anything. Congress could, of its own initiative- You don't want to speculate. I simply can't speculate, especially in this case where- It's probably wise for you not to speculate, but I thought I'd ask anyway just in case you wanted to speculate. And this, Mr. Barker here, is a priority under the executive action.  So if we agree, from your standpoint, with regard to Mr. Barker and the competency issue, can we reach the question of whether the BIA's procedure as laid out in MAM comports with due process? Well, I mean, to the extent that reviewing-yes. I mean, the question of whether MAM comports with due process is wrapped up, to some extent, in Mr. Barker's due process claim. But here, Mr. Barker and the present counsel can't show that the due process afforded Mr. Barker was constitutionally infirm, because they can't establish any error or substantial prejudice in this context. They certainly can't show that more is needed in order to protect the due process rights of Mr. Barker. Here, I mean, even if-looking at the Matthews-Geldrich analysis, Petitioner's counsel completely negates any of the burdens that this would put on- the administrative burdens on the government. Some of the indicia of incompetence are peppered throughout Mr. Barker's multiple hearings, which would lead me to believe that they're requesting competence evaluations multiple times throughout the proceedings, possibly at every one of his 11, 12 hearings. So, no, there's really no basis for finding that that is required. There really isn't even any basis for finding that that would have changed anything in this case. He answered-Mr. Barker answered the questions about whether he had any medical problems, whether he was on any medication. There's no-and he was responding- Does the answer, not as of now, to the question, do you have a medical problem, is that the kind of answer that a properly informed and properly tuned-in immigration judge should have picked up on to say, what do you mean, not as of now? Do you have medical issues? Right, no, I don't believe so, because ultimately he said he doesn't have any, and I don't think that that is a red flag. We don't believe that that would have raised a red flag for the immigration judge. At that point, Mr. Barker was also interacting and responding and meaningfully participating. It's coming in this overarching context of an unrepresented alien who's meaningfully participating in his proceedings. I mean, really, there's no reason to believe adding the procedures would have made any difference, but more importantly, there's no reason to believe here that Mr. Barker's due process rights were violated. He was afforded all the panoply of due process rights that's available to him under the Constitution, statutes and regulations, and there was no due process violation. Thank you, Your Honors, and me. Thank you for your presentation, and Ms. Trevi, we'll have you back on rebuttal. Just as an initial matter, I'd like to point out that this Court can consider whether Restrepo is incorrect in the first instance here. It's a pure issue of law. All the necessary factual findings were made below, and the issue has been briefed, so there is no reason why the Court can't decide this today and apply it to this case. As that particular issue, not in the context, not with the argument that there's some prejudice because he would have made arguments he didn't make, but just on its own, the assertion that, hey, you decided Restrepo incorrectly in light of Padilla, you need to revisit it. Is that something that was argued below and preserved here? No, Your Honor, that was not argued below, but it's a pure issue of law, so there's no reason why it can't be decided by this Court in the first instance. There's no reason to make it go through all the lower proceedings if this Court has everything it needs before it. I'd also like to point out that the government has made no Matthews test argument. This is the first time the government has mentioned that there would be a burden caused by our proposed test. In fact, the burden would be very low. It would be a list of questions that a judge would be required to ask. It wouldn't take too much time. And again, given the seriousness of the matters at issue, it would be perfectly justified. And finally, as to the statute of limitations argument, whether the Congress could have made or drafted a statute applying a statute of limitations argument, applying a statute of limitations to immigration proceedings, that's exactly what Congress has done with this catch-all statute of limitations. It said, okay, we're not always going to have a specific statute of limitations written out in every single statutory scheme, but in those cases where we don't, we have this catch-all five-year statute of limitations. And if that's – would there be a discovery rule defense available to the government if, for instance, here if the state of New Jersey hadn't properly notified – or hadn't properly, I assume – I assume the state of New Jersey didn't properly note this conviction in the criminal history that would have been available to the federal government. That's a good question, Your Honor. I believe in this case it doesn't matter. They'd be put on constructive notice by the fact that there is a conviction in the public record. That's a pretty tough standard to hold the government to, isn't it, given the complexity and the vast number of convictions and arrests and everything else that are going on across the country, that the federal government should be on constructive notice of everything that happens in every criminal courtroom across the United States? That's what you're arguing for. And what it means is five years and you're done, even if somebody successfully evades any detection at all by anybody but the court that happened to convict them. These things are all a matter of public record and they're all – I'd assume with technology, the technology that's before ICE, they were aware of evidently – I'm sorry. I think there is an obligation that the states report these to the FBI in a timely fashion. So you could be right on that argument. And in this case evidently the government found out about his 2011 police encounter, even though it doesn't look like there were any charges or anything there, so they found out about this. But that is the peril of the five-year rule, that the government may not timely find out something. That is true. Thank you, Ms. Treby, and I want to thank you on behalf of the court, on behalf of my colleagues, I want to thank you and your law firm, Steptoe & Johnson, for taking this case on a pro bono basis and for the high level of representation that you've provided to Mr. Barker and to the court. Thank you very much. Likewise to Justice. And we'll take the matter under advice.